**UNITED STATES of America**

v.

**E. L. WEISSINGER, William S. Weissinger, Mrs. Alice C. Weissinger, Iola A. Weissinger, Mrs. Ouida W. Massee, Mrs. Eugenia W. Deaton, Mrs. Emelyn W. Libbey.**

**Civ. No. 1522.**

United States District Court
W. D. North Carolina,
Bryson City Division.

July 10, 1956.

J. M. Baley, Jr., U. S. Atty., Hugh E. Monteith, Asst. U. S. Atty., Asheville, N. C., for plaintiff.

---

1. Continental Tie & Lumber Co. v. United States, 286 U.S. 290, 298, 299, 52 S.Ct. 529, 76 L.Ed. 1111.

T. M. Jenkins, Robbinsville, N. C., for defendants.

WARLICK, District Judge.

This is an action instituted by plaintiff, the United States of America, against the defendants for the purposes of restraining the defendants from cutting and removing certain timber from lands owned by the United States, on the ground that the defendants had breached a contract entered into with the government on June 1, 1951.

The sole and only question involved in this action is whether or not the defendants are required to pay to the plaintiff the amount of the bid price stated in the contract until 7,000,000 board feet of timber have been cut, scaled and paid for.

This cause came on for hearing at Shelby when it was made to appear to the Court that the parties could agree to and stipulate the facts. It was thereupon agreed that the stipulations be signed and that the attorneys for the plaintiff and the defendants would file briefs and that the Court after considering the stipulation, exhibits, and briefs of counsel would find the facts and render its conclusions of law thereon. Thereupon after having considered the stipulation, exhibits and briefs filed by counsel the Court finds the following facts:

1. That this Court has jurisdiction of all the parties and the subject matter of this action.

2. That some time prior to March 2, 1951, the United States of America, acting by and through the United States Forest Service, decided to sell certain timber from a tract of land containing approximately 13,221 acres in the Fires Creek area of the Nantahala National Forest, Clay County, North Carolina.

3. That on March 2, 1951, the United States of America acting by and through the United States Forest Service, mailed out to prospective purchasers a sales prospectus, one of which was received by the defendants, which prospectus set forth the estimated board feet of each species of timber to be cut and an appraisal value for each species, it being estimated in the prospectus that the total timber to be cut would be approximately 27,500,000 feet.

4. That the United States of America, acting by and through the United States Forest Service, caused an advertisement to be published in the Franklin Press (a paper published at Franklin, North Carolina), asking for bidders at the public sale of said timber, in which advertisement was also given the estimated number of board feet to be cut, the appraised value of each species and stated that the sale would be held at 2:00 o'clock p. m., April 17, 1951, at Franklin, North Carolina (which was later changed to May 1, 1951). The advertisement also contained the following provision:

"On June 21, 1953 and every two year intervals thereafter until sale expires June 21, 1959, total rates will be redetermined, but in no event will the redetermined rates be less than the basic appraised value as first above stated, and in no event will the redetermined rates which are below those bid become effective until 7,000 M board feet have been scaled and paid for at not less than the bid rate."

5. That at the public sale held pursuant to said advertisement the defendants were the successful bidders, and on June 1, 1951, a contract was entered into between the plaintiff and the defendants, in which contract was set forth the bid rates made by the defendants for each species of timber to be cut.

6. That the contract executed on June 1, 1951, was modified by certain modification agreements entered into by the parties to said contract on June 30, 1953, June 15, 1954, and June 21, 1955; that said modifications did not in any way change or alter the contract signed June 1, 1951, with reference to the payment of the bid price for the timber cut and scaled until 7,000,000 board feet had been so cut and scaled; that Section 2e of the contract is as follows:

"2e. In no event, however, shall the stumpage rates as established on any reappraisal date or upon appli-

cation of the purchaser plus the required deposit for improvement of the future stand of timber be less than the basic appraised rate as stated above in Section 2 plus the required deposit for improvement of the future stand of timber set forth in Clause 2b and *in no event shall rates so established, which are lower than the bid rates, become effective until at least 7,000 M board feet have been scaled and paid for at not less than bid rates."*

7. That the advertisement requesting bidders at said sale and the contract executed pursuant to said sale between the plaintiff and the defendants are both clear and explicit in stating that the first 7,000,000 board feet of timber cut and removed from said land must be paid for at the bid rates.

8. That at the time of the execution and delivery of the contract on June 1, 1951, the defendants knew that under the terms of said contract they were required to pay the bid rates for the first 7,000,000 board feet of timber scaled from the land described in the contract, regardless of whether or not the rates for said timber had been redetermined before said 7,000,000 board feet had been cut and removed therefrom.

9. That all of the persons to whom the prospectus was sent were advised that the timber on said tract of land had not been scaled by the plaintiff and that the figures given were of an estimated amount and each prospective bidder was specifically requested to go upon said land and make a cruise of the timber for his guidance in bidding at said sale.

10. That the plaintiff did not advise the defendants that there were 7,000,000 board feet of timber to be cut from tracts 7, 8 and 9 and did not agree with the defendants that any timber cut from tracts other than 7, 8 and 9 could be paid for at the redetermined rates.

11. That subsequent to the execution of the contract on June 1, 1951, the defendants entered upon said lands of the plaintiff and began to cut and remove the timber therefrom; and did cut and remove 4,557,060 board feet of timber, for which the defendants paid the plaintiff at the bid price set forth in said contract.

12. That on July 18, 1955, the Chief of the Forest Service made a reappraisal of the timber involved in said contract and materially reduced the price of most species of said timber; that the defendants continued to cut timber thereafter and tendered to the plaintiff as payment therefore only the amount calculated on the reappraisal made July 18, 1955, which amount the plaintiff refused to accept, and this action ensued.

The defendants place much emphasis on the several modifications made to the contract and insist that these modifications have the force and effect, since they were approved by the Forest Service, of abrogating the original contract and changing its terms and the effects thereof. A careful study of the modifications does not bear out these contentions and the most that can be said for the modifications is that each undertakes to set up a new purchase price for the timber cut. None of the modifications in any way have the force and effect of abrogating Section 2e of the original contract which provides that 7,000,000 board feet must be cut before any change in the rate of pay therefor shall become effective. The contract, a standard in use in the sale of forestry products, is plain and its terms are easily understood and the import thereof definitely determined. Looking at it from its four corners it is evident that one among the things that the parties to the contract had in mind and to which they fully and definitely agreed was that no change in the purchase price of the timber to be cut would come about unless and until the 7,000,000 board feet had been logged, cut and paid for, at which time the reappraisals in price would become effective. The minds of the contracting parties met on those conditions and definitely contracted accordingly.

I hold therefore that the defendants are not entitled to the benefit of the reappraisal rates until they have cut and re-

moved 7,000,000 board feet of timber at the bid rates; that after the defendants have paid for 7,000,000 board feet at the bid rates they would then be entitled to pay for the remainder of said timber at the reappraisal rates.

The plaintiff is entitled to the relief sought.

Judgment accordingly.